JOURNAL ENTRY AND OPINION
Melvin Washington appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of murder, aggravated robbery, and having a weapon while under disability. On appeal, he argues that the trial court erred in admitting testimony concerning his prior incarceration; he claims that the trial court erred in instructing the jury on the elements of murder and aiding and abetting; he challenges the exclusion of certain hearsay testimony he urges should have been admitted under the excited utterance exception; and he raises ineffective assistance of counsel and manifest weight challenges to his convictions. After thorough review of the record, we reject these contentions and affirm the judgment of the trial court.
The record reveals that, on July 14, 2000, Washington and four accomplices, James Terry, Lonnie Gwin, Jacques Bradley and Henry Eggleston, traveled from the east side of Cleveland to the west side for the purpose of committing robberies. Terry, Gwin, and Eggleston rode in a white Honda while Bradley and Washington followed in a black Pontiac Grand Prix.
Once on the west side, the cars became separated. Terry drove down a side street off West 130th Street looking for Bradley's car; there, Gwin, who had a .357 Magnum revolver, and Eggleston, who had a .38 caliber revolver, jumped out of the car and robbed two strangers at gunpoint. They then got back into the Honda and drove down West 130th Street, where they located Bradley and Washington.
At that point, Washington exited the Pontiac and Gwin exited the Honda, and they walked toward the intersection of West 130th Street and St. James Avenue. There, they waved down a white Chevrolet driven by Michael Carnell, who frequented the area to buy crack cocaine. Carnell got out of his vehicle and approached Gwin and Washington, apparently believing, based on their wave-down, that they were drug dealers. When Carnell figured out that they did not have any drugs, he turned to walk back to his vehicle; at that point, Washington shot him in the back with a nine millimeter semi-automatic handgun and then rummaged through his pockets and took $40 in cash.
Prior to these events, Kent Williams, who lived in the area, had gone out to get something to drink. As he exited "J.J.'s," he met up with three teenagers whom he recognized from the neighborhood. As the four proceed to walk north on West 130th Street, they saw two men trotting toward them; at that point, Williams and his three companions crossed the street to avoid the two men. From the other side of the street, Williams observed one of the two men flag down Carnell's car, saw Carnell get out of his car, and witnessed one of the men shoot him from behind. According to Williams, both robbers had guns. Williams ran from the scene but later returned after the police had arrived.
After the shooting, Gwin jumped back into the Honda, and Terry followed the Bradley car until it made a left-hand turn. At this time, Gwin instructed Terry not to follow Bradley any longer; he then told Terry and Eggleston what had happened. The trio in the Honda then began searching for the highway so they could get back to the east side.
Around 11:40 p.m., Patrol Officer Brian Morehead and his partner, Officer Klamert, received a broadcast of a shooting at West 130th Street and St. James. Minutes later, they received a description of a white Honda containing three black male suspects. Five minutes after that, they spotted the Honda and pulled it over on Lorain Avenue near West 106th Street. The officers arrested Gwin, Terry, and Eggleston and transported them to the scene of the crime, where Williams identified Gwin as the shooter but could not identify either Terry or Eggleston as the other robber.
At the scene of the crime, police recovered a nine millimeter shell. Later, Officer Adrian Neagu searched the Honda and recovered two weapons, later identified by Detective Thomas Lucey of the forensic unit as an operable .38 caliber revolver, which Eggleston admitted to carrying, and an operable .357 Magnum revolver, which Gwin carried during both robberies. The police never recovered the nine millimeter semi-automatic handgun used to shoot Carnell.
A few hours later, on July 15, 2000, around 3:30 a.m., Carnell died from the gunshot wound that entered the right side of his back, perforated his spinal cord, and exited his left chest. Later that day, police arrested Washington.
On July 24, 2000, a grand jury indicted Washington, Terry, and Gwin for aggravated murder, aggravated robbery, and having a weapon while under disability.
Washington tried the weapons disability charge to the court and proceeded to a jury trial on the other charges. During trial, the state called twenty-five witnesses, including Gwin, Terry, Eggleston and Bradley; police and scientific evidence witnesses; several eyewitnesses, including Kent Williams; and a jailhouse informant who had occupied a cell adjacent to Washington, Jason Smith.
Smith, who had been jailed for a traffic violation, occupied the cell next to Washington on July 17, 2000. According to Smith, he had grown up with Washington and the two had a conversation in jail. Smith testified that Washington told him he had shot a man while robbing people on the west side.
The defense rested without presenting any witnesses. After deliberation, the jury found Washington not guilty of aggravated murder and not guilty of the lesser included offense of murder under R.C.2903.02(A), but guilty of the lesser included offense of murder under R.C. 2903.02(B). The jury also found him guilty of aggravated robbery, but not guilty of the firearm specifications. The court then found him guilty of having a weapon while under disability.
The court sentenced Washington to a term of fifteen years to life for the murder, consecutive with eight years for the aggravated robbery, but concurrent with an eleven-month sentence for having a weapon while under disability.
Washington now appeals, raising six assignments of error for our review. The first states:
 THE TRIAL COURT ERRED BY ALLOWING THE INTRODUCTION OF APPELLANT'S STATEMENT THAT HE HAD A PRIOR CRIMINAL RECORD.
First, Washington challenges Officer Andrew Ezzo's testimony regarding Washington's prior incarceration, urging that this testimony had no probative value and prejudiced his right to a fair trial. In particular, Washington complains about the following statement made by the officer during his direct testimony: "As we got further into the conversation, dates came up [sic] Melvin stated he was in North Central prison up until May 8th of 2000 and basically our conversation ended." (Tr. 753.) Washington maintains that the state offered this testimony to mislead the jury into thinking that because he had committed a previous crime, it is more likely that he also committed the crime charged in the underlying case.
The state counters that the challenged testimony is relevant because Washington made the statement to convince police that because he had just been released from prison and did not want to go back, he would not have committed another crime. The state also notes that Officer Ezzo made only one brief reference to Washington's prior imprisonment during his direct testimony but that the defense repeatedly questioned the officer on this topic during cross-examination. Further, the state argues that it did not present any evidence as to the nature of the previous conviction or the term he spent in prison.
Pursuant to Evid.R. 609(A), evidence concerning previous criminal convictions is only admissible to attack the credibility of a witness. Washington did not testify at trial, and, therefore, evidence of his prior criminal record is inadmissible. However, we have concluded that Washington waived appellate review of this alleged error by not preserving his objection during trial.
Prior to trial, defense counsel made an oral motion in limine to prevent Officer Andrew Ezzo from testifying concerning Washington's statement about his previous incarceration. The court did not immediately rule on the motion and, instead, stated that it would "think about that one." (Tr. 71.) When Officer Ezzo testified, however, the defense failed to renew its objection. (Tr. 753.)
In State v. Brown (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, the court stated at paragraph three of the syllabus:
 3. A denial of a motion in limine does not preserve error for review. A proper objection must be raised at trial to preserve error.
Here, because Washington failed to raise a proper objection during Officer Ezzo's testimony, he has waived all but plain error as to this evidentiary challenge. "Plain error does not exist unless, but for the error, the outcome at trial would have been different." State v. Jones
(2001), 91 Ohio St.3d 335, 343, 744 N.E.2d 1163, quoting State v. Joseph
(1995), 73 Ohio St.3d 450, 455, 653 N.E.2d 285.
After careful review of the transcript, we are unable to say that the outcome of the trial would have been different but for the testimony concerning Washington's prior imprisonment made by Officer Ezzo during his direct testimony. If any prejudice in this regard did occur, the defense invited it by repeatedly questioning Officer Ezzo on Washington's prior imprisonment during cross-examination. (Tr. 757-762.) Accordingly, we reject this assignment of error.
 II. THE COURT ERRED BY INSTRUCTING THE JURY ON THE CHARGE OF MURDER UNDER R.C. 2903.02(B) WHICH WAS NOT A LESSER INCLUDED OFFENSE OF AGGRAVATED MURDER.
Next, Washington argues that the trial court erred in instructing the jury on the elements of murder under R.C. 2903.02(B), claiming that murder is not a lesser included offense of aggravated murder under R.C.2903.01(B). He contends that aggravated murder can be committed without committing murder under R.C. 2903.02(B), urging that the murder statute contains an additional proximate cause element not required to establish aggravated murder.
In State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, the court set forth the following test in its syllabus to determine whether an offense constitutes a lesser included offense of another:
 3. An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.
Here, the grand jury indicted Washington for aggravated murder pursuant to R.C. 2903.01(B), which states:
 (B) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.
The jury, however, found him not guilty of aggravated murder but guilty of murder pursuant to R.C. 2903.02(B), which states:
 (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.
Washington concedes that the first prong of the Deem test is satisfied in this case, e.g., murder carries a lesser penalty than aggravated murder. See R.C. 2929.02. Washington argues, however, that the second and third prongs of the Deem test have not been met. Regarding the second prong, he claims that aggravated murder can be committed without also committing murder, urging that the term "proximate result" is used in R.C. 2903.02(B) but not in R.C. 2903.01(B). We reject this argument.
R.C. 2903.01(B) provides that "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery." As such, this statute requires a purposeful act to cause a death that is directly linked to an underlying felony. R.C.2903.02(B), on the other hand, does not require the specific intent to kill but specifies that the death also be linked, as a proximate result of committing a felony. Hence, Washington's position is not well taken.
Washington further questions whether aggravated murder has an element that is not required to prove the commission of murder. A cursory review of both statutes reveals that R.C. 2903.01(B) requires the additional element of a specific purpose to kill which is not contained in R.C.2903.02(B).
Accordingly, we have concluded that murder under R.C. 2903.02(B) is a lesser included offense to aggravated murder under R.C. 2903.01(B). As such, the court did not err in instructing the jury on this lesser included offense, and we overrule this assignment.
 III. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY ON A LESSER INCLUDED OFFENSE WHICH WAS NOT SUPPORTED BY THE EVIDENCE.
Washington also argues that the court erred in instructing the jury concerning murder and aiding and abetting, urging that these instructions were not supported by the evidence. Washington maintains that the state only presented evidence implicating him as the gunman. The state points out that the defense raised a theory, during its cross-examination of Lonnie Gwin, that Gwin, and not Washington, actually shot Michael Carnell.
As the court stated in State v. Goodwin (1999), 84 Ohio St.3d 331,345, 703 N.E.2d 1251:
 * * * "Yet even though an offense may be statutorily defined as a lesser included offense of another, a charge * * * is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. Accord State v. Shane (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272, 274.
* * *
 "* * * If the evidence presented at trial meets [the Thomas test] with regard to the lesser included offense, the trial court must instruct the jury on the lesser offense. State v. Loudermill (1965), 2 Ohio St.2d 79 [31 Ohio Op.2d 60, 206 N.E.2d 198]. If the test is not met, the lesser included offense charge need not be given. State v. Kidder (1987), 32 Ohio St.3d 279 [513 N.E.2d 311]. An instruction is not required every time some evidence is presented. There must be sufficient evidence admitted at trial to allow the jury to reasonably reject the greater offense and find the defendant guilty on the lesser included offense. State v. Shane (1992), 63 Ohio St.3d 630
[590 N.E.2d 272]. State v. Goodwin, 1997 Ohio App. LEXIS 1528, *60-61 (Apr. 17, 1997), Cuyahoga App. No. 68531, unreported, 1997 WL 186770.
Here, the evidence presented at trial permitted the jury to reject the aggravated murder charge, which they did, presumably, because of an absence of evidence to prove the specific intent element. Likewise, based on the defense's theory that Gwin shot Carnell and the testimony of witnesses that implicated Washington and Gwin as the robbers, but either identified Gwin as the shooter or were unable to identify the actual shooter, the jury could have reasonably convicted Washington as an aider and abetter to murder.
Based on the foregoing, we find that the trial court properly instructed the jury on the elements of the lesser included offense of murder and on aiding and abetting. Accordingly, we reject this assignment of error.
 IV. THE TRIAL COURT ERRED IN FAILING TO ALLOW THE DEFENSE TO CROSS EXAMINE STATE'S WITNESS ABOUT HEARING AN EXCULPATORY STATEMENT.
In this assignment of error, Washington challenges the court's evidentiary ruling which precluded Kent Williams from offering hearsay testimony that, immediately after the murder, he heard "a guy on a bike" yell to the assailants, "You just robbed my cousins." Washington claims that this testimony is admissible under the excited utterance exception to the hearsay evidence rule and would have demonstrated that Gwin and Eggleston, the men who committed the first robbery, also robbed and murdered Michael Carnell.
The state argues that this does not constitute an excited utterance and, instead, the guy on the bike," Earl Miles, contemplated this statement. The state also notes that the defense could have called Miles to testify but decided not to do so.
We first must consider whether such testimony constituted hearsay evidence. Evid.R. 801(C) defines hearsay in the following manner:
 "Hearsay" is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.
Here, the declarant is Earl Miles, but the defense sought to have Kent Williams testify as to Miles' statement "You just robbed my cousins" to the two men who robbed Carnell. Hence, this is a statement other than one made by the declarant. The defense chose to present this evidence to prove the truth of the matter asserted, i.e., that Gwin and Eggleston, the two men who had robbed Miles' "cousins" earlier that night, also robbed and murdered Carnell. Therefore, this is a hearsay statement, and, pursuant to Evid.R. 802, it is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule.
Washington maintains that the excited utterance exception in Evid.R. 803(2) applies to the excluded testimony. That rule states:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness.
* * *
 (2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under stress of excitement caused by the event or condition.
Hence, regardless of whether Miles is available to testify as a witness, his statement is admissible if it is an excited utterance. However, a trial court's evidentiary rulings will not form the basis for a reversal absent an abuse of discretion that materially prejudices the accused. See State v. Maurer (1984), 15 Ohio St.3d 239, 265,473 N.E.2d 768.
During its case-in-chief, the state called Miles to testify regarding his pretrial identification of Washington. The defense objected to Miles' testimony claiming surprise. Before ruling on the defense's objection, the trial court decided to voir dire Miles.
During the voir dire, Miles admitted that he had smoked up to twenty to thirty marijuana "blunts" prior to witnessing the robberies. (Tr. 958-960.) "* * * To qualify as an excited utterance consideration must be given to * * * (b) the mental and physical condition of the declarant." Staff Notes, Evid.R. 803(2).
Taking into account his mental and physical condition when Miles made the statement, and that he admitted to being under the influence of an extraordinary amount of marijuana, any statement he made would lack the indicia of reliability on which the excited utterance exception is based.
Based on the foregoing, we have concluded that the court properly exercised its discretion in excluding this testimony. Further, we are not convinced that the admission of this hearsay testimony from a "stoned" declarant would have changed the outcome of this trial. Accordingly, we have concluded that the trial court properly excluded this hearsay evidence, and we reject this assignment of error.
 V. THE TRIAL COURT ERRED IN FAILING TO ALLOW THE DEFENSE TO CROSS EXAMINE STATE'S WITNESS ABOUT HEARING AN EXCULPATORY STATEMENT.
Although not articulated in the assignment of error itself, Washington claims a denial of effective assistance of counsel because his counsel failed to call Earl Miles to the stand. Washington urges that Miles' testimony would have exculpated him because Miles indicated during voir dire that Lonnie Gwin and James Terry were the two men who robbed Michael Carnell, and he implicated Terry as the actual gunman.
To prevail on a claim of ineffective assistance of counsel, a defendant must meet the test set forth in Strickland v. Washington (1984),466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052. The defendant must first show that counsel's performance was deficient. Strickland,466 U.S. at 687-688. Second, to warrant a reversal, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
The defendant bears the burden of proving the ineffectiveness of counsel. State v. McNeill (1998), 83 Ohio St.3d 438, 451, 700 N.E.2d 596. The defendant cannot meet this burden by making bare allegations that find no support in the record. State v. Leek (July 29, 1999), Cuyahoga App. No. 74338, unreported, citing State v. Stewart (Nov. 19, 1998), Cuyahoga App. No. 73255, unreported, citing State v. Smith (1985),17 Ohio St.3d 98, 477 N.E.2d 1128.
Here, trial counsel decided not to put Earl Miles on the stand notwithstanding the fact that he had potentially exculpatory testimony. However, as noted above, Miles claimed to have smoked marijuana prior to witnessing the shooting. Considering the fact that Miles admitted he smoked twenty to thirty "blunts" prior to witnessing the shooting, his reliability and credibility would have been brought into issue. Defense counsel made a strategic decision not to present him as a witness.
After conducting the voir dire of Miles, the state declined to call him as a witness, the prosecutor stating, "I have a 20 blunt rule." (Tr. 966.) The defense also decided to forego Miles' testimony, replying, "We have a 30 blunt rule." (Tr. 966.) Based upon the record, defense counsel made a tactical decision not to call Miles to the stand. Further, from our view of the record, given the testimony of the other witnesses, we are unable to say that the outcome of the trial would have been different if Miles had testified. Accordingly, we reject this assignment of error.
 VI. THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his final assignment of error, Washington argues that his conviction is against the manifest weight of the evidence. In particular, he questions the credibility of Gwin, Terry, Eggleston, and Bradley, who all identified him as one of the two men who robbed and murdered Michael Carnell. The state responds by advocating the strength of the testimony of Gwin, Terry, Eggleston and Bradley and pointing out that their testimony had been corroborated at trial by the testimony of Jason Smith, the jailhouse informant who testified that Washington had admitted to the robbery and murder during a conversation they had in jail.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, the court set forth the following standard for criminal manifest weight appeals:
 * * * Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's, supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 Ohio B.Rep. 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
After a review of the record, we conclude that Washington's convictions are not against the manifest weight of the evidence. The evidence includes the testimony of his four accomplices, Gwin, Terry, Bradley, and Eggleston, identifying Washington and Gwin as the two men who robbed Michael Carnell and indicating that Washington carried the nine millimeter semi-automatic handgun used to shoot Carnell; the testimony of a jailhouse informant, Jason Smith, who testified that Washington admitted these crimes to him during a conversation they had in jail; the testimony of police and forensic witnesses, who testified that police stopped a white Honda and detained Gwin, Terry, and Eggleston, and that a search of the vehicle uncovered Eggleston's .38 caliber revolver and Gwin's .357 Magnum revolver, but that they did not have the nine millimeter semi-automatic handgun used to kill Carnell; and the testimony of Kent Williams, an eyewitness to the murder, who positively identified Gwin but could not identify Eggleston or Terry during a cold stand at the crime scene shortly after the shooting.
The defense, however, notes that Williams identified Gwin as the shooter and testified that both robbers wore either red or red and blue sweatshirts; Washington wore a white sweatshirt that night. Williams further testified that the taller of the two men shot Carnell — Gwin is 6'1 and Washington is 5'10. Williams never identified Washington as one of the two men who robbed Carnell; however, he did not identify Eggleston or Terry either.
In addition, another witness, James Webb, testified that, although he did not see the shooting, he heard the gunshot and then saw two black males run past his house, one wearing a red sweatshirt and the other wearing a blue one. He later identified Eggleston as one of the men who ran past his house; however, he could not positively identify the other man, although he indicated that it could have been Gwin.
Nevertheless, the manifest weight of the evidence implicates Washington, not Eggleston or Terry, as Gwin's accomplice and the second robber, and although the evidence may have been insufficient to support the charge of aggravated murder, a charge of which the jury acquitted Washington, the evidence is more than adequate to support his conviction for murder pursuant to R.C. 2903.02(B). Accordingly, we reject this assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J. and COLLEEN CONWAY COONEY, J. CONCUR